UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BEVERLY DOGSLEEP,                    )
                                     ) No. CV-05-3051-MWL
          Plaintiff,                 )
                                     ) ORDER GRANTING DEFENDANT'S
v.                                   ) MOTION FOR SUMMARY JUDGMENT
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social               )
Security,                            )
                                     )
          Defendant.                 )
                                     )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on March 20, 2006. (Ct.
Rec. 20, 29).  Plaintiff Beverly Dogsleep ("Plaintiff") filed a
reply brief on March 10, 2006.  (Ct. Rec. 33).  Attorney D. James
Tree represents Plaintiff; Special Assistant United States
Attorney L. Jamala Edwards represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 7).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 29)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 20).
///

## JURISDICTION

On April 24, 1998, Administrative Law Judge ("ALJ") Raymond
Little issued a decision awarding Plaintiff benefits for a closed
period of disability from July 3, 1995 to July 31, 1996.  (AR 336-
346).  For the period August 1, 1996 and thereafter, ALJ Little
found that Plaintiff's condition had improved and that she could
perform sedentary jobs existing in significant numbers in the
national economy.  (AR 343).

In March of 2000, Plaintiff filed a new application for
Supplemental Security Income ("SSI") benefits, alleging disability
since 1995, due to a learning disability, fatigue, and a head
injury and breathing problems stemming from a 1995 auto accident.
(Administrative Record ("AR") 376-377, 395).  The application was
denied initially and on reconsideration.

On September 6, 2001, Plaintiff appeared before ALJ Denny
Allen, at which time testimony was taken from Plaintiff and
vocational expert Scott Whitmer.  (AR 42-56).  On November 29,
2001, the ALJ issued a decision finding that Plaintiff was not
disabled.  (AR 22-28).  The Appeals Council denied a request for
review, and the ALJ's decision became the final decision of the
Commissioner.  On April 2, 2004, the District Court concluded that
Plaintiff could not perform her past sedentary work and;
therefore, remanded the case back to the Commissioner for
additional proceedings at step five of the sequential evaluation
process.  (AR 578-598).

On November 17, 2004, Plaintiff appeared before ALJ Richard
Hines, at which time testimony was taken from Plaintiff, medical
expert James Haynes, M.D., and vocational expert Scott Whitmer.

(AR 518-559).  On March 10, 2005, the ALJ issued a decision
finding that Plaintiff was not disabled.  (AR 502-509).  The
Appeals Council denied a request for review, and the ALJ's
decision became the final decision of the Commissioner, which is
appealable to the district court pursuant to 42 U.S.C. § 405(g).
Plaintiff filed this action for judicial review pursuant to 42
U.S.C. § 405(g) on September 9, 2005.  (Ct. Rec. 1).

## STATEMENT OF FACTS

     The facts have been presented in the administrative hearing
transcript, the ALJ's decision, the briefs of both Plaintiff and
the Commissioner and will only be summarized here.  Plaintiff was
45 years old on the date of the ALJ's decision.  (AR 503).  She
completed the ninth grade in school and has obtained a GED.  (AR
401, 527).  Her past relevant work consists of work as a fish
technician II for a Fishery Resource Program, a cashier at a
firework stand, and a janitor/cleaner.  (AR 388-391).  Plaintiff
indicated that she has not performed substantial work since
sustaining injuries in a July 1995 motor vehicle accident.

     At the administrative hearing held on November 17, 2004,
Plaintiff testified that she was divorced and lived in a home with
her two minor aged children, ages 15 and four.  (AR 527).  She
stated that she stands about 5'3" tall and weighs 208 pounds.  (AR
528).  She testified that she cannot work because she gets tired
easily and has soreness in her back.  (AR 529).

     With regard to daily activities, Plaintiff stated that she
takes care of all of her personal needs including bathing,
dressing and grooming, does housework, cooks meals, washes dishes,
and watches a lot of television.  (AR 530-532).  Although she

indicated she has difficulty with peripheral vision, she testified
that she has a driver's license, drives as much as she has too,
and had driven to the administrative hearing. (AR 531-532, 536).
She indicated that she shops for groceries with help from her
older son. (AR 532). Plaintiff stated that, when she can afford
it, she goes out to eat and out to the movies, plays or concerts.
(AR 534-535).

Plaintiff had cried during the hearing and indicated that she
often had crying spells. (AR 537). She stated that the crying
spells affected her ability to concentrate. (AR 537). It was
noted that Plaintiff's restricted breathing was audible at the
time of the hearing, and Plaintiff testified that the restricted
breathing caused her to tire. (AR 537-538). She indicated that
she takes about an hour nap once a day, every day. (AR 538).

Medical expert James Haynes, M.D., a specialist in the field
of neurology, testified at the administrative hearing held on
November 17, 2004. (AR 522-526). Dr. Haynes stated that
Plaintiff suffered a major accident on July 3, 1995, sustaining a
major head injury, broken arm and a couple of cranial nerve
injuries. (AR 524). He indicated that Plaintiff underwent brain
surgery to remove a large blood clot and thereafter spent a
considerable amount of time in rehabilitation. (AR 524).
Plaintiff testified that she was hospitalized for two and a half
months. (AR 536). Dr. Haynes opined that Plaintiff would have
met a listing impairment for about a year following the accident,
probably up to July 3, 1996. (AR 524).

///

///

1    Dr. Haynes stated that Plaintiff had a hoarse voice from a

2  vocal cord injury, but did not otherwise have residual

3  impairments.  (AR 525).  He testified that Plaintiff would have

4  some physical limitations; i.e., shortness of breath due to

5  difficulty with passing air through the larynx and trachea, but

6  would be capable of performing work at the sedentary or light

7  level.  (AR 525).  Dr. Haynes indicated that her exertional

8  capability would just be limited by her ability to take in air,

9  and she would thus probably have difficulty with too much activity

10 on the job.  (AR 526).  He opined that she would have difficulty

11 climbing stairs, would be restricted to lifting no more than maybe

12 10 pounds and would probably have trouble if a job called for her

13 to be on her feet and walking around all day.  (AR 526).

14    Vocational expert Scott Whitmer also testified at the

15 administrative hearing held on November 17, 2004.  (AR 540-554).

16 Mr. Whitmer indicated that Plaintiff's past work includes work as

17 a cashier, unskilled, light exertion, as a building maintenance

18 laborer, heavy exertion, as a motel cleaner, light exertion, and

19 as a fish hatchery worker, skilled, medium exertion.  (AR 542-

20 543).

21    Mr. Whitmer testified that if an individual were limited to a

22 full range of simple, repetitious sedentary work, she would not be

23 capable of performing Plaintiff's past relevant work.  (AR 543).

24 However, Mr. Whitmer also testified that a person of Plaintiff's

25 age, educational level and past work experience would be capable

26 of performing the sedentary jobs of surveillance system monitor,

27 order clerk of food and beverage, and paramutual ticket checker.

28 (AR 543-544).  With the added limitations of avoidance of hazards

and restrictions on field of vision, the vocational expert
testified that the individual would still be able to perform the
sedentary jobs he listed.  (AR 544).

On cross-examination, Mr. Whitmer agreed that the
surveillance system monitor positions were classified as
government services by the DOT, and, since 9/11, those positions
were more semiskilled in nature.  (AR 545-546).  However, Mr.
Whitmer indicated that surveillance system monitors in casinos, or
gaming surveillance system monitors, were unskilled positions.
(AR 546-548).  Mr. Whitmer did state that the job of surveillance
system monitor would require focus and concentration.  (AR 549).
He testified that if a person often has deficiencies of
concentration, persistence or pace resulting in the failure to
complete tasks in a timely manner it could interfere with work as
a surveillance system monitor.  (AR 550).

Mr. Whitmer testified that a younger individual with a
marginal education who is limited to simple, repetitive tasks,
with superficial public contact, moderate hoarse speech, work
speed slower than others so that she should not work on a team,
and is overwhelmed easily with work with average demands for
memory would be precluded from working.  (AR 552).

Mr. Whitmer also testified that a person with the following
restrictions would be hard to employ on a full-time basis:
cashiering or accounting would be too demanding, low-memory,
visual processing speed and history of head injury would result in
not being able to do clerical work, clerical speeds are slow, a
need to work in a slow to moderately paced activity, overwhelmed
easily with work, average demands for memory and rapid visual

processing of information, a very obvious breathing noise as a result of a previous accident, need work that is predictable, as little or no requirements for decision making, and work speed may be slower than others.  (AR 553).

Assuming a younger individual limited to sedentary work with Plaintiff's past relevant work and moderate limitations in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others, Mr. Whitmer testified that it would preclude a lot of employment and would be hard to employ a person with that many moderate limitations.  (AR 553-554).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and

vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work,

the fifth and final step in the process determines whether

Plaintiff is able to perform other work in the national economy in

view of Plaintiff's residual functional capacity, age, education

and past work experience.    20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish

a *prima facie* case of entitlement to disability benefits.

*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.

Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).    The initial burden is

met once Plaintiff establishes that a physical or mental

impairment prevents the performance of previous work.    The burden

then shifts, at step five, to the Commissioner to show that (1)

Plaintiff can perform other substantial gainful activity and (2) a

"significant number of jobs exist in the national economy" which

Plaintiff can perform.    *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

Commissioner's decision.    42 U.S.C. § 405(g).    A Court must uphold

the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by

substantial evidence.    *See Jones v. Heckler*, 760 F.2d 993, 995

(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

1999).    "The [Commissioner's] determination that a plaintiff is

not disabled will be upheld if the findings of fact are supported

by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572

(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).    Substantial evidence

is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 3, 1995.  (AR 508).  At step two, the ALJ found that Plaintiff has the severe impairments of obesity, chronic obstructive pulmonary disease, vocal cord dysfunction, and borderline intellectual functioning, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 505).

The ALJ concluded that Plaintiff has the RFC to perform a full range of sedentary work, but it must be simple, repetitive work, with no climbing of stairs and no exposure to hazards, like dangerous machinery or chemicals.  (AR 505, 506).

At step four of the sequential evaluation process, the ALJ found that Plaintiff lacks the RFC to perform the exertional requirements of her past relevant work as a fish technician, cashier, or motel cleaner.  (AR 506).  However, the ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations.  (AR 507).  Examples of such jobs included work as a surveillance system monitor, an order clerk, and a paramutual ticket taker.  (AR 507).  Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 507-509).

///

1

**ISSUES**

2     Plaintiff contends that the Commissioner erred as a matter of

3  law.  Specifically, she argues that:

4     1.   The ALJ failed to incorporate limitations found by Arch

5  Bradley, M.ED., and state agency reviewing physicians into his RFC

6  determination;

7     2.   The ALJ improperly concluded that Plaintiff is not fully

8  credible;

9     3.   The ALJ's step five decision was not properly supported

10 by substantial record evidence; and

11    4.   Plaintiff was not capable of performing the jobs

12 identified by the ALJ at step five.

13    This Court must uphold the Commissioner's determination that

14 Plaintiff is not disabled if the Commissioner applied the proper

15 legal standards and there is substantial evidence in the record as

16 a whole to support the decision.

17

**DISCUSSION**

18 **A.  Medical Evidence**

19    Plaintiff contends that the ALJ erred by failed to

20 incorporate limitations found by Arch Bradley, M.ED., and state

21 agency reviewing physicians into his RFC determination.  (Ct. Rec.

22 21-1, pp. 13-16).  The Commissioner responds that the ALJ properly

23 evaluated the medical evidence.  (Ct. Rec. 30, pp. 8-11).

24    The courts distinguish among the opinions of three types of

25 physicians:  treating physicians, physicians who examine but do

26 not treat the claimant (examining physicians) and those who

27 neither examine nor treat the claimant (nonexamining physicians).

28 *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996).  A treating

physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

///

///

Case 2:05-cv-03051-JPH   Document 37   Filed 05/30/06

The ALJ determined that Plaintiff retained the RFC to perform a full range of sedentary exertion work, but it must be simple, repetitive work, with no climbing of stairs and no exposure to hazards, like dangerous machinery or chemicals. (AR 505-506). The ALJ noted that his RFC determination was consistent with the findings of Dr. Bradley and the other medical sources, presumably including the opinions of the state agency reviewing physicians. (AR 504-506). The ALJ did not reject the opinions of Dr. Bradley or the state agency reviewing physicians in this case. (AR 504-506).

Dr. Bradley examined Plaintiff on March 21, 2000. (AR 457-461). Dr. Bradley noted that the reason for the referral was to evaluate for learning disabilities, emotional/personality disorders, and vocational implications. (AR 457). He diagnosed borderline intellectual functioning and a history of a closed head injury. (AR 461).

Plaintiff reported to Dr. Bradley that her academic skills were about the same now as they were prior to the 1995 auto accident; however, she felt more emotional and cried more often since the accident. (AR 457). Dr. Bradley found that Plaintiff did not have an emotional or personality disorder but that she may have experienced a decrease in her cognitive abilities. (AR 461).

Dr. Bradley noted that Plaintiff worked persistently and in an organized way throughout the testing, and that her concentration was good. (AR 459). Based on the examination, Dr. Bradley opined that her intellectual functioning fell in the borderline range. (AR 460). He found that Plaintiff should be capable of dealing with stress related to work within her skill

levels, although she could be overwhelmed easily with work with
average demands for memory and rapid visual processing of
information.  (AR 460).  Dr. Bradley suspected that Plaintiff
would do best in work that is slow to moderately paced. (AR 460).
He further noted that work that is predictable, has little or no
requirements for decision making, is evenly paced, and has little
demand for interpersonal communication skills should minimize the
potential for stress or pressure.  (AR 460).  Dr. Bradley
indicated that Plaintiff would probably work best by herself
rather than as part of a team because her work speed may be slower
than others; however, he noted that she should be able to get
along with others well enough to work around them.  (AR 460).  He
opined that she would probably be able to work around the public,
but not in situations with a high potential for conflict and
requirements of sophisticated social skills.  (AR 460-461).
Accordingly, it was Dr. Bradley's opinion that Plaintiff could
perform work with some limitations.

     Dr. Bradley indicated that Plaintiff has some minimal level
functional academic skills which may be functional on a job, but
her IQ scores suggested cashiering or accounting would be too
demanding for her.  (AR 461).  He noted that test results
suggested that she could not process quickly enough to work in
retail sales, and that she is probably limited to unskilled work.
(AR 461).  He also indicated that her slow clerical speed suggests
that she would not be fast enough to be competitive in work like
computer data entry.  (AR 460).  Nevertheless, Dr. Bradley did not
find that Plaintiff was permanently disabled or otherwise unable
to perform any work.  (AR 457-461).

The ALJ's RFC determination, that Plaintiff retains the RFC
to perform simple, repetitive work, is not inconsistent with the
above detailed findings of Dr. Bradley which essentially limits
Plaintiff to the performance of simple, unskilled work.

On April 20, 2000, state agency reviewing physicians, John
McRae, Ph.D., and James Bailey, Ph.D., noted on a Psychiatric
Review Technique form that Plaintiff had a borderline IQ and had
no restrictions of activities of daily living (able to do most
activities of daily living), had slight difficulties in
maintaining social functioning (relates fairly well for routine
interactions) and often has deficiencies of concentration,
persistence or pace resulting in the failure to complete tasks in
a timely manner (is limited to simple, repetitive tasks).  (AR
463-471).  On a mental residual functional capacity form, the
state agency reviewing physicians marked that Plaintiff had
moderate limitations in six of 20 categories, but they also found
that she had no marked limitations.  (AR 472-473).  The reviewing
physicians indicated that Plaintiff would be limited to simple,
repetitive tasks, could attend to concrete tasks with few academic
demands, is able to meet the public for routine problems but not
complex problems, and would respond slowly to work changes but
could respond to simple goals set by others.  (AR 474).  They
concluded that Plaintiff should be able to do simple, routine
tasks with superficial public contact.  (AR 474).

Based on the foregoing, and as with Dr. Bradley, the findings
of Drs. Bailey and McRae are consistent with the ALJ's RFC
determination that Plaintiff may perform only simple, repetitive
work.  (AR 506).

Contrary to Plaintiff's arguments, the ALJ summarized the medical evidence and accounted for the limitations found by both Dr. Bradley and the state agency reviewing physicians.  The state agency physicians explicitly found that Plaintiff could perform only simple, repetitive work (AR 474) and Dr. Bradley opined that Plaintiff would be limited to simple, unskilled work (AR 460-461). The ALJ agreed with the findings of these physicians and related the same in his decision.  (AR 505-506).  Since the ALJ's finding that Plaintiff should be limited to simple, repetitive tasks is consistent with the conclusions of the above medical professionals, the undersigned finds that Plaintiff's argument to the contrary is without merit.

**B.  Credibility**

Plaintiff argues that the ALJ's opinion that Plaintiff is not fully credible is not properly supported.  (Ct. Rec. 21-1, pp. 16-18).  Plaintiff specifically argues that the ALJ failed to provide appropriate rationale for finding her testimony unconvincing. (*Id.*)  The Commissioner responds that the ALJ appropriately gave clear and convincing reasons to discredit Plaintiff's testimony. (Ct. Rec. 30, pp. 6-8).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

1998) (citation omitted).  Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."  *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995).  "General findings are
insufficient:  rather the ALJ must identify what testimony is not
credible and what evidence undermines the claimant's complaints."
*Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th
Cir. 1993).

The ALJ considered all of the evidence submitted related to
Plaintiff's subjective complaints, including her activities of
daily living, prior work record, precipitating and aggravating
factors, effectiveness and use of medication and therapy, alleged
and/or demonstrated functional restrictions, and the duration,
frequency and intensity of the alleged symptoms, and determined
that Plaintiff was not fully credible.  (AR 506).  In support of
this finding, the ALJ indicated as follows: (1) the evidence shows
that Plaintiff is able to ambulate well and do all activities of
daily living without assistance; (2) Plaintiff has an adequate
support system available; (3) Plaintiff complains she is unable to
work because she is often tired, yet a job requiring sitting for
most of the time would not be significantly different from what
she is currently doing when she watches television for most of the
day; (4) Plaintiff's impairments require very little medical care
or medication; and (5) no medical source of record has found that
Plaintiff's impairments were totally disabling or would prevent
her from working.  (AR 506).

///

///

At the administrative hearing, Plaintiff testified that she takes care of all of her personal needs including bathing, dressing and grooming, does housework, cooks meals, washes dishes, and watches a lot of television. (AR 530-532). Although she indicated she has difficulty with peripheral vision, she also testified that she has a driver's license, drives as much as she has too, and had driven to the administrative hearing. (AR 531-532, 536). She stated that she shops for groceries with help from her older son, and she goes out to eat and out to the movies, plays or concerts when she can afford it. (AR 532, 534-535).

At the administrative hearing, Plaintiff informed the ALJ that she could not look sideways. (AR 531). However, on June 21, 2000, Morris Fuller, M.D., indicated that Plaintiff drives, shops and does housework. (AR 462). Dr. Fuller stated that this activity "is not consistent with 'no peripheral vision.'" (AR 462).

When the ALJ asked whether she was able to perform sedentary work, Plaintiff stated that she just did not think she could sit at a desk for eight hours a day. (AR 533). However, Plaintiff reported that she watches television from the morning news until about 4:00 p.m. in the evening. (AR 413, 531).

Although the undersigned agrees with Plaintiff that watching television is not equivalent to performing full-time work activity (Ct. Rec. 21-1, p. 17; Ct. Rec. 33, p. 3), it was not improper for the ALJ to consider Plaintiff's daily activities, including her statement that she watches a lot of television, when evaluating her overall credibility in this case. Moreover, the ALJ offered ///

several reasons (*see supra*), in addition to Plaintiff's performance of daily activities and watching television most of the day, to discount Plaintiff's credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

After reviewing the record, the undersigned judicial officer finds that the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are sufficient and supported by substantial evidence in the record. Accordingly, the undersigned finds that the ALJ did not err by concluding that Plaintiff's allegations regarding her limitations are not totally credible in this case. (AR 506, 508).

**C.  Step Five**

Plaintiff contends that the ALJ erred at step five of the sequential evaluation process. (Ct. Rec. 21-1, pp. 18-21). Plaintiff specifically asserts that the jobs identified by the vocational expert were identified in response to an incomplete hypothetical. (Ct. Rec. 21-1, pp. 18-19). The Commissioner

responds that the ALJ's step five decision was supported by substantial evidence.  (Ct. Rec. 30, pp. 11-12).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can perform despite her identified limitations only after Plaintiff has established a prima facie case of disability by demonstrating she cannot return to her former employment.  *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986).  The ALJ can satisfy this burden by either (1) applying the grids or (2) taking the testimony of a vocational expert.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

Plaintiff asserts that, when her counsel supplemented the ALJ's original hypothetical with specific findings of Dr. Bradley and the state agency reviewing physicians, the vocational expert indicated that the addressed limitations would preclude competitive employment.  (Ct. Rec. 21-1, pp. 19-21).
///

The undersigned concluded in Section A above that the ALJ properly summarized the medical evidence and accounted for the limitations found by Dr. Bradley and the state agency reviewing physicians. *Supra*. The ALJ's RFC determination, that Plaintiff is limited to simple, repetitive tasks, is consistent with the conclusions of these medical professionals and supported by substantial record evidence. *Supra*. When the ALJ incorporated those limitations into a hypothetical to vocational expert Scott Whitmer, Mr. Whitmer testified that she would be capable of performing the jobs of surveillance system monitor, order clerk of food and beverage, and paramutual ticket checker, jobs existing in significant numbers in the national economy. (AR 543-544). With the added limitations of avoidance of hazards and restrictions on field of vision, the vocational expert testified that the individual would still be able to perform the sedentary jobs he listed. (AR 544).

The ALJ accepted the vocational expert's testimony and determined that there were a significant number of jobs in the national economy (surveillance system monitor, an order clerk, and a paramutual ticket taker) which Plaintiff could perform despite her limitations. (AR 507). Accordingly, based on the vocational expert's testimony, and within the framework of the grids, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled. (AR 507-509). Since the ALJ's determination in this regard was based on a hypothetical presented to the vocational expert which properly accounted for Plaintiff's residual functional capacity, Plaintiff's argument that the hypothetical was incomplete lacks merit.

**D.   Identified Jobs**

     Plaintiff next argues that the mental limitations identified by the ALJ prevent her from performing the three jobs identified by the ALJ.  (Ct. Rec. 21-1, pp. 21-26).  Plaintiff specifically asserts that the descriptions of the identified jobs in the Dictionary of Occupational Titles ("DOT") are inconsistent with Plaintiff's level of functioning.  (Ct. Rec. 21-1, pp. 21-26). The Commissioner responds that the jobs identified by the ALJ were appropriate for Plaintiff given the ALJ's proper RFC determination.  (Ct. Rec. 30, pp. 12-16).

     The Commissioner takes administrative notice of job information in the DOT, but also relies on information provided by a vocational expert; neither source automatically trumps the other.  20 C.F.R. § 416.966(d); SSR 00-4p.  The DOT "is not the sole source of admissible information concerning jobs." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994).  "The Secretary may take administrative notice of any reliable job information, including . . . the services of a vocational expert." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991) (internal quotation marks and citations omitted).  The DOT itself states that it is not comprehensive, but provides only occupational information on jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that an ALJ may rely on vocational expert testimony that

///

///

contradicts the DOT when the record contains persuasive evidence to support the deviation).  When there is a conflict between the DOT and a vocational expert's testimony, the ALJ may rely on the vocational expert's testimony when he provides a reasonable explanation of the conflict based on his experience.  SSR 00-4p; *Johnson*, 60 F.3d at 1435.  In this case, the undersigned finds that there is no conflict between the DOT and the vocational expert's testimony.

As noted by the Commissioner, all three jobs listed by the ALJ are described by the DOT as having a Specific Vocational Preparation ("SVP") level of 2.  (Ct. Rec. 30, p. 14).  SVP is defined as the amount of time a typical worker requires to learn the techniques, acquire the information and develop the facility needed for average performance in a specific job.  SVP level 2 defines the time needed to learn a job as "anything beyond short demonstration up to and including one month."  Unskilled work corresponds to an SVP level of 1 or 2.  SSR 00-4p.  Unskilled work is simple work that can be learned on the job in a short period of time and which requires little or no judgment.  20 C.F.R. § 416.968(a).  The regulatory definitions of skill levels are controlling.  SSR 00-4p.

Consistent with the Commissioner's regulatory definitions, SSR 00-4p, Plaintiff's RFC to perform simple, repetitive sedentary work demonstrates that she has the capacity to perform the unskilled positions noted by the vocational expert in this case. Accordingly, the ALJ did not err by finding that Plaintiff could

///

///

perform the simple, unskilled jobs of surveillance system monitor, order clerk of food and beverage, and paramutual ticket checker. (AR 507).

Plaintiff continues her step five argument by claiming that Dr. Bradley's vocational opinions prevent her from performing the duties required of order clerks and paramutual ticket checkers. (Ct. Rec. 21-1, pp. 22-25).  However, Dr. Bradley's findings convey that Plaintiff can work but would be limited to unskilled jobs.  (AR 461).  He specifically opined that Plaintiff should be capable of dealing with stress related to work within her skill levels (i.e., unskilled work).  (AR 460).  Dr. Bradley did indicate that Plaintiff's IQ scores suggested that cashiering or accounting would be too demanding for her and that she had slow clerical speeds, but he also noted that she does have some minimal level functional academic skills which may be functional on a job. (AR 460-461).  Dr. Bradley did not find that Plaintiff was permanently disabled or otherwise unable to perform unskilled work.  (AR 457-461).  Dr. Bradley's report does not demonstrate that Plaintiff is incapable of performing work as an order clerk or a paramutual ticket checker.

Plaintiff additionally asserts that the state agency reviewing physicians' opinions regarding Plaintiff's ability to maintain attention and concentration prevent her from performing the job of surveillance system monitor.  (Ct. Rec. 21-1, pp. 25-26).  The state agency reviewing physicians indicated on a Psychiatric Review Technique form that Plaintiff "often" has deficiencies of concentration, persistence or pace resulting in the failure to complete tasks in a timely manner.  (AR 470).

However, they qualified their opinion in this regard by writing beneath this check-box response that Plaintiff "is limited to simple, repetitive tasks." (AR 470).  Moreover, Dr. Bradley opined that Plaintiff worked persistently and in an organized way throughout his testing, and that her concentration was good.  (AR 459).  Plaintiff fails to demonstrate that the opinions of these medical professionals dictate that she is not capable of performing the unskilled job of surveillance system monitor.

Likewise, with regard to the job of surveillance system monitor, while the vocational expert agreed that the surveillance system monitor positions were classified as government services by the DOT, and, since 9/11, those positions were more likely categorized as semiskilled positions, he also indicated that surveillance system monitors in casinos, or gaming surveillance system monitors, were considered unskilled positions at the time of the administrative hearing.  (AR 545-548).

Again, the ALJ did not err by finding that Plaintiff could perform the simple, unskilled jobs of surveillance system monitor, order clerk of food and beverage, and paramutual ticket checker. (AR 507).

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is able to perform simple, repetitious sedentary work, including work as a surveillance system monitor, an order clerk of food and beverage, and a paramutual ticket checker, jobs existing in significant numbers in the national economy, is supported by substantial ///

evidence and free of legal error.  Therefore, Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 20**) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 29**) is **GRANTED**.

3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

IT IS SO ORDERED.

**DATED** this   30th   day of May, 2006.

                              s/Michael W. Leavitt
                            MICHAEL W. LEAVITT
                         UNITED STATES MAGISTRATE JUDGE